UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANNA ANDERSON,**<br><br>                Plaintiff,<br><br>        v.<br><br>**MERRICK GARLAND**,<br><br>                Defendant. | Case No. 1:23-cv-02674 (TNM) |

### MEMORANDUM ORDER

Anna Anderson was fired from her job at the U.S. Department of Justice in 2020. In the lead up to her termination, Anderson received negative performance reviews and was denied telework privileges—all because, Anderson alleges, she refused to withdraw a 2016 EEO complaint against her previous boss. Anderson now sues Attorney General Merrick Garland claiming retaliation in violation of Title VII. The Attorney General moves to dismiss. Because Anderson failed to exhaust several of her claims, they will be dismissed. For the claims she did exhaust, Anderson plausibly alleges retaliation. So the Court will deny the Attorney General's motion as to those claims.

I.

Anderson joined DOJ in 2008. From 2010 until her termination in April 2020, Anderson worked as a Program Operations Specialist in the Office of Justice Programs (OJP) in Washington, D.C. Compl. ¶¶ 6, 16. Her responsibilities included reviewing contractor work performance, responding to Freedom of Information Act requests, processing requests for equipment and supplies, and tracking government purchase card use. *Id.* ¶ 17.

Anderson's claims relate to her first and second-line supervisors at OJP—Barry Bratburd and Jennifer Scherer. *Id.* ¶ 19. In 2016, Anderson filed an EEO complaint against Bratburd alleging discrimination. *Id.* ¶ 20. Two years later, in September 2018, Scherer asked Anderson to withdraw the EEO complaint. *Id.* ¶ 23. Scherer suggested the complaint could jeopardize Bratburd's promotion to a GS-15 position. *Id.* But Anderson refused. *Id.* ¶ 24.

Anderson attributes several instances of mistreatment by Scherer—spanning from February 2019 to her dismissal in April 2020—to this refusal. The first allegedly retaliatory act occurred in February 2019, five months after Anderson was asked to withdraw the complaint. *Id.* ¶ 25. Anderson alleges that Scherer denied her proposed telework schedule without reason. *Id.* And when Anderson's union representative pressed Scherer about this decision, Scherer told Anderson she could no longer have her own cubicle because she teleworked part time. *Id.* ¶ 26.

In June 2019, following another months-long gap with no retaliatory incidents, Scherer rated Anderson "unacceptable" on her 2019 performance appraisal record and placed her on a 45-day Performance Improvement Plan (PIP). *Id.* ¶ 28. The PIP stated that Anderson had ongoing issues with "completing tasks." *Id.* ¶ 29. But Scherer never raised any performance concerns with Anderson before. *Id.* Then the next month, Scherer allegedly reassigned work duties to Anderson, saddling her with a "disproportionately heavy workload." *Id.* ¶ 31. Following this, Anderson started the EEO complaint process by submitting an EEO Pre-Complaint intake form charging Scherer with retaliation. *Id.* ¶ 32.

Two months later, Scherer instructed Anderson to review her purchase card records. *Id.* ¶ 33. Anderson interprets this request as an implicit accusation by Scherer of violating DOJ's purchase card regulations. *Id.* According to Anderson, no other employees under Scherer's

supervision had to perform such review. *Id*. And Anderson's union president independently reviewed her purchase card transactions and found no errors. *Id*. ¶ 34.

The alleged retaliatory actions became more severe in the fall of 2019. In September, Scherer placed Anderson on a second 45-day PIP. *Id*. ¶ 35. And in October, Scherer issued Anderson a letter of reprimand for "continuously disregard[ing] the standards of courtesy and respect consistent with [DOJ's] rules[.]" *Id*. ¶ 36. That same month, DOJ's EEO Director provided Anderson with a Notice of Right to File a Discrimination Complaint. *Id*. ¶ 37. Anderson then filed an EEO complaint against Scherer alleging unlawful retaliation. *Id*. ¶ 42.

At this point, Anderson was being treated for "stress-related physical ailments, anxiety, and depression" allegedly stemming from Scherer's hostility. *Id*. ¶ 38. Anderson provided Scherer a note from her physician expressly excusing her from work for the entire month of November. *Id*. ¶ 39. But Sherer did not respond to Anderson for several days. *Id*. Then, on November 12, Scherer entered an "Absent Without Leave" notation in Anderson's attendance record. *Id*. ¶ 40. The next day, Scherer denied Anderson's request to be excused from work. *Id*. ¶ 39. Scherer also issued a letter to Anderson accusing her of not successfully completing her PIP. *Id*. ¶ 43.

In mid-November, Anderson submitted a request to take annual leave. *Id*. ¶ 44. But Scherer denied the request, even though she had granted similar ones before. *Id*. ¶ 45. Then, in early December, Scherer denied Anderson's request to take sick leave, despite Anderson providing a doctor's note. *Id*. ¶ 46.

Finally, in mid-December, Scherer issued a proposal to remove Anderson. *Id*. ¶ 47. For the next several months, Scherer "persistently identified alleged errors" in Anderson's work and

"fabricated" errors to make Anderson appear incompetent. *Id*. ¶ 48. Then on May 1, 2020, DOJ fired Anderson. *Id*. ¶ 49.

Anderson began the EEO complaint process in July 2019 by submitting an EEO Pre-Complaint intake form describing Scherer's alleged retaliatory actions. *Id*. ¶ 32. Three months later, in October 2019, DOJ's EEO Director provided Anderson with a Notice of Right to File a Discrimination Complaint. *Id*. ¶ 37. Anderson then filed an EEO complaint against Scherer alleging unlawful retaliation. *Id*. ¶ 42.

Following her removal in May 2020, Anderson, through her union representative, filed a "Step 1 Grievance" under her collective bargaining agreement. *See* Decl. of Jennifer McCarthy (McCarthy Decl.) ¶ 3, ECF No. 9-4. DOJ denied this Step 1 Grievance. *Id*. ¶ 4. Anderson's union representative then filed a "Step 2 Grievance" for Anderson, *id*. ¶ 5, which DOJ also denied, *id*., Ex. 5 at 30. The next step—Step 3—permitted Anderson's union to refer the matter to arbitration. *See id*., Ex. 6 at 35. But Anderson's union representative did not do so. *Id*. ¶ 5. Several months later, Anderson filed an appeal with the Merit Systems Protections Board (MSPB) challenging her removal, which was dismissed for lack of jurisdiction. *Id*. ¶ 9.

In September 2023, Anderson filed this suit. The Attorney General moved to dismiss. This motion is now ripe.

## II.

A defendant may move to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In determining whether a complaint fails to state a claim, [a court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Attorney General also moves for summary judgment in the alternative, but only as long as the Court does not consider documentary evidence attached to its motion as properly incorporated by reference. *See* Mot. to Dismiss, or Summary Judgment (MTD) at 5, ECF No. 9. Since the Attorney General's documentary evidence is central to Anderson's claim, and Anderson does not object to its inclusion, the Court will consider this evidence incorporated by reference. *See Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017). So it need not "convert[] the motion to one for summary judgment." *Id*.

### III.

Anderson's Complaint raises one count of retaliation and one count of retaliatory hostile work environment. Compl. ¶¶ 53–65. The Court will address each in turn.

### A.

Section 717 of the Civil Rights Act of 1964 prohibits federal employers from retaliating against employees who have complained of discrimination. 42 U.S.C. § 2000e-16; *see Webster v. Del Toro*, 49 F.4th 562, 564 (D.C. Cir. 2022). To prove retaliation, a plaintiff must establish that "she suffered (i) a materially adverse action (ii) because he or she had brought or threatened

5

to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-3(a)).

The Attorney General argues that most of Anderson's retaliation claims should be dismissed as unexhausted. And on the exhausted claims, the Attorney General argues that Anderson neither showed the alleged retaliatory conduct was materially adverse nor pled facts establishing an inference that the conduct was caused by her protected EEO activity. The Court agrees with the Attorney General on exhaustion—a point Anderson largely concedes. As to the remaining claims, Anderson plausibly alleges retaliation.

1.

Start with exhaustion. Before an aggrieved employee can sue for retaliation in federal court, she "must run a gauntlet of agency procedures and deadlines to administratively exhaust his or her claims." *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017); *Hill v. Kempthorne*, 577 F. Supp. 2d 58, 64 (D.D.C. 2008) ("A federal employee alleging retaliation in violation of Title VII must timely exhaust his or her administrative remedies."). And the first step in the "gauntlet" is contacting an EEO counselor "within 45 days" of the alleged retaliatory action. *Crawford*, 867 F.3d at 105; 29 C.F.R. § 1614.105(a)(1).

Anderson contacted her EEO counselor on July 30, 2019. Compl. ¶ 8. So any claims of discrimination or retaliation that occurred before June 15, 2019—45 days before Anderson initiated EEO contact—are unexhausted and must be dismissed. *See Weber v. Battista*, 494 F.3d 179, 183 (D.C. Cir. 2007). Several of Anderson's claims fit this bill. Anderson was denied telework and ousted from her cubicle in February 2019, months before she initiated EEO contact. *Id.* ¶¶ 25–26. And while her retaliation claims based on the PIP and "unacceptable" performance

rating from June 5, 2019, are closer, they still fall ten days short of the 45-day window.[1]  So these claims are unexhausted and must be dismissed.

Claims arising after an employee initiates EEO contact must also be administratively exhausted.  *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) ("[Plaintiff] must exhaust his administrative remedies with respect to the later-occurring incidents even if they are related to the claims in the administrative complaint.").[2]  And here, Anderson failed to include in her November 14, 2019, EEO administrative complaint any claims based on the October letter of reprimand.  *See* Decl. of Laura Colón-Marrero (Colón-Marrero Decl.) ¶¶ 4–7, ECF No. 9-3; *id*., Ex. 3., Complaint of Discrimination, ECF No. 9-3.  Nor did she timely amend her complaint to include the denial of sick leave on December 5, 2019.  *Id*., Ex. 5, ECF No. 9-3.  Since these claims were not raised in the EEO administrative complaint process, they have not been exhausted.  So they will be dismissed.[3]

---

[1]  The Attorney General notes that, at the administrative stage, Anderson did not allege that she was placed on a PIP in June 2019.  *See* MTD at 7.  Rather, she alleged only that she received a mid-year evaluation that identified areas for improvement.  *Id*.  Either way, Anderson's claim is unexhausted because it arose more than 45 days before her initiation of EEO contact.

[2]  A minority of courts in this district have held that plaintiffs need not exhaust retaliation claims arising after the filing of an EEOC charge if those claims "necessarily would have come within the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination."  *Mount*, 36 F. Supp. 3d at 85 (cleaned up).  But Anderson does not argue that the letter of reprimand or denial of sick leave were within the scope of the ongoing investigation.  *See* Mem. in Opp'n (Opp'n) at 8–9, ECF No. 11.  Nor did she object when the agency omitted these claims in its January 10, 2020, letter accepting her claims for investigation.  *See Foxworth v. McDonough*, --- F. Supp. 3d ---, 2024 WL 111761, at *5 (D.D.C. 2024) (noting that plaintiff's failure to timely object to omission of claim from letter of acceptance leaves claim unexhausted).  So these claims are unexhausted even under the minority approach.

[3]  The Court considers Anderson's EEO and grievance filings as documents "incorporated by reference in the complaint."  *See Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009).  Anderson's Complaint "necessarily relies" on these documents, even though they were

For her part, Anderson argues that her claims arising outside the 45-day window were exhausted because DOJ investigated them.  *See* Mem. in Opp'n (Opp'n) at 8, ECF No. 11.  And so long as DOJ was "on notice" of these claims, Anderson insists the purpose of the exhaustion requirement was satisfied.  *See Crawford*, 867 F.3d at 110 ("[T]he central question is whether the employee's complaint contained sufficient information to put the agency on notice of the claim and to enable the agency to investigate it.").

True, DOJ acknowledged Anderson's claim based on her mid-year evaluation in its investigation.  *See* MTD, Ex. 4 at 18–19, ECF No. 9-3.  But in doing so, it did not waive the defense of untimeliness.  *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) ("[A]gencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint . . . .").  To the contrary, in its Notice of Proposed Summary Judgment, the EEOC found that Anderson exhausted no claims that arose "prior to June 15, 2019."  *See* Finding of Partial Dismissal and Notice of Proposed Summary Judgment at 2, ECF No. 9-5.  Although the EEOC noted that these unexhausted claims could still be used as background evidence, it made clear that they are "not independently actionable."  *Id*.  The EEOC's mere acknowledgment of claims on the record does not waive Title VII's exhaustion requirement.  Nor can Anderson claim to have exhausted any possible retaliation claim that happens to be "lurking in the administrative record" when it was never formally raised and is not "reasonably related" to the charged violations.  *Webster*, 49 F.4th at 568.

Anderson also asks for equitable tolling, claiming "she was not notified of the time limits and was not otherwise aware of them."  29 C.F.R. § 1614.105(a)(2).  But Anderson "bears the

---

not "produced by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Id*. (cleaned up).  And Anderson does not object to their incorporation.  *See* Opp'n at 6–11.

8

burden of pleading and proving facts supporting equitable tolling." *Aceto v. England*, 328 F. Supp. 2d 1, 5 (D.D.C. 2004). And here she says only that she "believed that, by reporting the incidents to her Union, she was complying with the EEO procedures." Opp'n at 9. This bare allegation of misunderstanding hardly qualifies as one of the "extraordinary and carefully circumscribed instances" that justifies tolling. *Aceto*, 328 F. Supp. 2d at 6. So the claims that fall outside the 45-day window, and that were not folded into Anderson's November 14, 2019, complaint, are unexhausted and will be dismissed.

The Attorney General also argues that Anderson failed to exhaust her retaliation claims based on her removal from service. *See* MTD at 8. Because removal claims are appealable to the MSPB, they have a different—and more complex—set of exhaustion requirements than general retaliation or discrimination claims. *See* 5 C.F.R. § 1201.3(a)(1); 5 U.S.C. § 7121.

Under this framework, Anderson had three possible paths to exhaustion—and, in turn, federal court. First, as with her other retaliation claims, Anderson could have contacted an EEO counselor and filed a formal complaint. *See Webster*, 49 F.4th at 566. Second, she could have followed the "statutory procedure" established by the Civil Service Reform Act (CSRA) and filed an appeal with the MSPB. 5 U.S.C. § 7702(a); *Am. Fed'n of Gov't Emps., Loc. 2052 v. Reno*, 992 F.2d 331, 332 (D.C. Cir. 1993). Third, Anderson could have filed a claim under her collective bargaining agreement's "negotiated grievance procedure." 5 U.S.C. § 7121(d), (e). Anderson's termination notice outlined these options: EEO complaint, MSPB appeal, or negotiated grievance procedure. *See* Ex. 1, Decision to Remove, ECF No. 9-4.

Anderson chose door number three. And in doing so, she agreed to forgo a direct challenge with the EEO or MSPB. Under the CSRA, an aggrieved employee may challenge her

9

removal under the statutory procedure or the negotiated procedure, "but not both."  5 U.S.C. § 7121(d); *see id*. § 7121(e)(1).

The negotiated grievance procedure entails three steps—all of which are outlined in Anderson's collective bargaining agreement.  *See* MTD Ex. 6, Collective Bargaining Agreement (CBA), art. 23, § 7, ECF No. 9-4.  With help from her union representative, Anderson completed Steps One and Two.  *See* McCarthy Decl. ¶ 4.  But at each step, the agency dismissed her complaint.  *Id*. ¶¶ 4–6; MTD Ex. 3, ECF No. 9-4; *id*., Ex. 5, ECF No, 9-4.  This placed Anderson at Step Three, which provides that "the Union may . . . refer the matter to arbitration."  CBA, art. 23, § 7.

Anderson concedes that her claim was never arbitrated but only because union representative declined to proceed to arbitration, contrary to her wishes.  *See* Opp'n at 10.  The Attorney General counters that a decision by an arbitrator is a prerequisite to judicial review—no matter if it was the union representative or Anderson herself who declined to pursue arbitration.

To determine whether Anderson exhausted her removal claim, the Court follows CSRA's precise (if byzantine) framework for judicial review of employment discrimination and personnel action claims.  For claims challenging a removal action involving discrimination or retaliation—commonly called "mixed cases"—the plaintiff must first appeal the result of her negotiated grievance procedure to the MSPB.  *Am. Fed'n of Gov't Emps.*, 992 F.2d at 336.  Similarly, when an employee pursues a "pure" discrimination claim under the negotiated grievance procedure, she "may reach federal court only after appealing the final decision in the grievance process to the EEOC."  *Koch v. Walter*, 934 F. Supp. 2d 261, 269 (D.D.C. 2013); *see also Johnson v. Peterson*, 996 F.2d 397, 401 (D.C. Cir. 1993) (holding that employees who challenged arbitrator's award in pure discrimination case must first appeal to EEOC).

The process is different when a plaintiff pursues the negotiated grievance procedures for non-discrimination claims—claims challenging only the basis for removal.  In these cases, the plaintiff may seek review of the "award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the [MSPB]."  5 U.S.C. § 7121(f).  These appeals may be filed only in the U.S. Court of Appeals for the Federal Circuit.  *Id*. § 7703(b)

When Anderson pursued the negotiated grievance procedure, she did not allege that her removal resulted from discrimination or retaliation.  *See* MTD Ex. 2, Union Step One Memo, ECF No. 9-4.  She only challenged the merits of the removal decision.  *Id*.  So judicial review of her complaint is covered by 5 U.S.C. § 7121(f).  And that provision provides judicial review only to "the award of an arbitrator."  *Id*.  Because Anderson (through her union representative) did not pursue arbitration, she is ineligible for judicial review.  But even if she had pursued her claim to arbitration, judicial review would be available only in the Federal Circuit.  5 U.S.C. § 7703(b)(1)(A).[4]  Either way, her claim must be dismissed.

Anderson says she can sidestep this exacting exhaustion framework because her union representative never referred her claim to arbitration, and she did everything within her power to exhaust her remedies.  But the CSRA provides no review procedure for agency dismissals of grievances that do not reach arbitration—whether the decision to forgo arbitration was made by the employee or the union.  Section 7121(f) is clear and limited: "judicial review shall apply to the award of an arbitrator."  It does not apply to the agency's Step One or Step Two dismissal.

---

[4]  Even if Anderson had pursued a "mixed case" in her negotiated grievance procedure, she would fare no better here.  Mixed case appeals from the negotiated grievance procedure can eventually land in federal district court.  *See, e.g.*, *Am. Fed'n of Gov't Emps.*, 992 F.2d at 335.  But the plaintiff must first bring such claims before the MSPB.  *Id*.  Because Anderson did not properly appeal the agency's decision to the MSPB, this Court lacks jurisdiction.  *Id*.

Anderson argues that this limitation on judicial review "contravenes the congressional intent and purpose of Title VII." Opp'n at 10. But federal courts "have consistently read the CSRA narrowly, refusing to imply remedies that cannot be found in the language of the statute." *Johnson*, 996 F.2d at 401. So this Court will not "read[] between the lines [of the CSRA] to interpolate remedies Congress did not provide." *Id*. (cleaned up); *accord Koch*, 934 F. Supp. 2d at 269 (holding that exhaustion requirements applied even though union "declined to invoke arbitration" for grievances).

By design, the negotiated grievance procedure has certain advantages to the statutory procedure. For one, it is "usually much simpler." *See Am. Fed'n of Gov't Emps.*, 992 F.2d at 333. And this procedure also gives the complainant the assistance of a union representative. But every rose has its thorn. Plaintiffs who elect the negotiated grievance procedure forfeit guaranteed judicial review. Anderson was well warned of this fact. So she must live with her union representative's decision, even if she would have pursued a different course.[5] This is no different than litigants in court, who are typically bound by their attorneys' strategic decisions, even if they would have decided differently. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962). The Court will dismiss Anderson's removal claim as unexhausted.

### 2.

This leaves the three retaliation claims Anderson did exhaust: (1) the assignment of an allegedly disproportionate amount of work on July 5, 2019, (2) Anderson's placement on a PIP

---

[5] Anderson further attempts to circumvent the CSRA's requirements by arguing that she exhausted her removal claim by raising the agency's "Notice of Proposed Removal" in her administrative complaint. Opp'n at 9–10. Yet Anderson's Complaint does not identify the Notice of Proposed Removal as a basis for her retaliation claim. *See* Compl. ¶¶ 56, 63. And Anderson may not amend her Complaint by the briefs in opposition to a motion to dismiss. *Wilson v. DNC Serv. Corp.*, 417 F. Supp. 3d 86, 97 (D.D.C. 2019), *aff'd,* 831 F. App'x 513 (D.C. Cir. 2020).

in September 2019, and (3) the denial of annual leave request in December 2019. *See* MTD at 11 (conceding Anderson exhausted these claims).

To plead retaliation under Title VII, Anderson must allege that she suffered a materially adverse action because she engaged in protected EEO activity. *See Baloch*, 550 F.3d 1198. The Attorney General argues that Anderson has not met these pleading requirements: Scherer's actions were not materially adverse, and they took place too long after Anderson's protected EEO activity to give rise to an inference of causation. These arguments are non-trivial. But all that is required at this stage is that Anderson "provide enough factual heft to show a plausible entitlement to relief." *Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010). And she satisfies this low bar.

Start with whether Scherer's conduct was materially adverse. For retaliation claims, conduct is materially adverse if it would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 969 (2024) (cleaned up). Anderson's allegations that she was assigned a disproportionately heavy workload, placed on a PIP, and denied leave satisfy this requirement. *See Crowley v. Vilsack*, 236 F. Supp. 3d 326, 331 (D.D.C. 2017) (holding that imposition of a PIP can constitute an adverse action for retaliation claim even if it does not affect employee's salary, grade, or performance appraisal); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) ("A reasonable employee might well be dissuaded from filing an EEO complaint if she thought her employer would retaliate by burying her in work."). Of course, such actions do not always rise the level of materially adverse actions. "For such alleged harms to be materially adverse, . . . they must not be "unduly speculative." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013). And to survive

summary judgment, Anderson will need to show that Scherer's conduct caused her "objectively tangible harm." *Id*.

The Attorney General also argues that dismissal is appropriate because the five-month gap between Anderson's EEO activity and the first alleged act of retaliation could not support an inference of causation.

To show causation, "[a] plaintiff can sometimes . . . rely[] solely on the fact that an adverse action shortly followed the plaintiff's protected activity." *Ho v. Garland*, --- F.4th ---, 2024 WL 3260764, at *3 (D.C. Cir. 2024). But the temporal connection must be "close." *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003). Both the Circuit and the Supreme Court have suggested that "a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Anderson's five-month gap between her protected EEO activity and first alleged retaliatory incident certainly stretches the "outer limit" for supporting an inference of temporal causation. *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015). But neither the Circuit nor the Supreme Court "has established a bright-line three-month rule." *Hamilton*, 666 F.3d at 1358. Instead, courts must evaluate claims based on temporal proximity in context, looking to "the specific facts of each case to determine whether inferring causation is appropriate." *Id*.

Anderson has alleged sufficient facts to satisfy causation at this early stage. Though the five-month gap here does not support a strong inference of causation, it is not completely out of range. *Cf. Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 85 (D.D.C. 2003) (granting

14

motion to dismiss for lack of causation when gap between EEO activity and retaliatory action was over one year). To survive summary judgment, Anderson must provide "specific facts" supporting an inference of causation. *Hamilton*, 666 F.3d at 1358. Whether Anderson's retaliation claim survives the more demanding summary judgment standard remains to be seen.

**B.**

Turn now to Anderson's retaliatory hostile work environment claim (Count II). To prevail at this stage, Anderson must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (cleaned up).[6]

Anderson bases this claim on the same employment actions that underlie Count I. *See* Compl. ¶¶ 61–66. For the reasons discussed above, Anderson alleges sufficient facts to plead a retaliatory hostile work environment. That said, courts in this district generally "frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." *Brett v. Brennan*, 404 F. Supp. 3d 52, 66 (D.D.C. 2019). The "hostile work environment" label is not "an open sesame to recovery for time-barred violations." *Baird*,

---

[6] Anderson argues that, because she is bringing a *retaliatory* hostile work environment, she need only show that the hostile environment would "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 93 (D.D.C. 2016). In other words, she need not show that the hostile environment altered the conditions of her employment. *See Baird*, 662 F.3d at 1250. Anderson is not alone on this. Other courts in this district have noted that it is "unclear . . . whether the same standard applies to both discriminatory and retaliatory hostile work environment claims." *Fields*, 207 F. Supp. 3d at 92; *see also Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 79 (D.D.C. 2013) (discussing uncertainty). And at least three circuits have held that a different standard applies for retaliatory hostile work environment claims. *Fields*, 207 F. Supp. 3d at 9. Because Anderson's claim survives the motion to dismiss under either standard, the Court need not resolve this issue now.

662 F.3d at 1251. To survive summary judgment, Anderson must show that the discrete retaliatory actions were "adequately linked into a coherent hostile environment claim." *Id*.

## IV.

For all these reasons, upon consideration of Defendant's [9] Motion to Dismiss or for Summary Judgment, the briefing related to this motion, the pleadings, and the relevant law, it is hereby

**ORDERED** that Defendant's Motion to Dismiss or for Summary Judgment is GRANTED IN PART as to the unexhausted claims in Count I and II. It is

**FURTHER ORDERED** that, as to Plaintiff's remaining exhausted claims, Defendant's Motion is DENIED.

Dated: July 22, 2024                                       TREVOR N. McFADDEN, U.S.D.J.